Filed 9/27/21  Hatcher v. Powell CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| RONALD HATCHER et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> COLLIN R. POWELL, <br><br> Defendant and Appellant. | 2d Civil No. B302730 <br> (Super. Ct. No. 56-2015-00472035-CU-PO-VTA) <br> (Ventura County) |

Collin R. Powell appeals from the judgment after a jury awarded damages against him for the wrongful death of two passengers and injuries to a third passenger in a vehicle he was driving, and from the award of costs.  He contends:  (1) the trial court erred when it refused a jury instruction regarding non-delegable duty of care, (2) the verdict was legally inconsistent, (3) the court abused its discretion when it denied his motion for new trial, and (4) the cost award was excessive.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND
## *The accident*

Powell, Michael Hatcher, and Kayla Bean drank vodka at Powell's residence. After drinking, they got into Powell's car. Aimee Hoff, who had not been drinking, walked up and got in. Powell was driving, with Hatcher in the front passenger seat, Bean in the left rear seat, and Hoff in the right rear seat.

Powell drove to a dark, winding portion of Potrero Road with a posted speed limit of 40 miles per hour. A sign warned of a left curve ahead and advised a speed of 35 miles per hour. Hoff screamed, "Slow down." Bean said, "Go faster."

Powell drove off the road and proceeded 105 feet before he hit a barricade and construction equipment stored off the shoulder. The car hit the bucket of a backhoe, which ripped through the passenger side of the car, killing Hatcher and Hoff. Bean was injured.

When an officer arrived at the scene, Powell said, "I'm the driver. I'm drunk. Take me to jail." He said he had nine or ten shots of vodka. He said as he approached the collision scene, his friends urged him to drive faster. He increased his speed to at least 65 miles per hour. He saw the backhoe but lost control and crashed into it. Breath tests showed his blood alcohol level as .178 and .179, and a blood test showed .19 percent alcohol.

The construction equipment—a tank trailer, generator trailer, and backhoe—had been placed by Mark Smith, doing business as Smitty's Construction Service. Smith was a subcontractor doing underground utility work for Bouchard Communications, Inc. (Bouchard).

### *Pretrial proceedings*

Ronald and Kathleen Hatcher (parents of Michael Hatcher) and Charles and Teresa Hoff (parents of Aimee Hoff) sued Powell, Bouchard, and Smith for wrongful death.[1] The Hatchers also sued the County of Ventura. Bean sued Powell, Bouchard, and Smith for negligence. Powell sued Bouchard for negligence and willful misconduct. The cases were consolidated.

The County of Ventura entered a good faith settlement of $60,000, with $15,000 each to Ronald Hatcher, Kathleen Hatcher, Teresa Hoff, and Bean, and a waiver of costs against Powell. (Code Civ. Proc., § 877.6.) The court dismissed all cross-complaints against the County and barred further claims against it for indemnity, contribution, or comparative fault. Powell did not accept Ronald and Kathleen Hatcher's offer to settle for $500,000 each. (Code Civ. Proc., § 998.)

### *Trial*

Smith allegedly stored the construction equipment at a location specified by county public works inspector James Van Voorhis, and left it there for three days after the work was completed. Whether this was a safe location was the subject of conflicting expert opinion.

The county encroachment permit for the project required equipment left overnight "be stored a minimum of 10 feet from the edge of the pavement." One expert estimated the backhoe was between nine and 10 feet from the fog line at the time of the accident. Another expert calculated the distance from the fog line to the backhoe bucket as 11.3 feet.

The traffic control plan required the overnight use of

---

[1] Charles Hoff died during the case and is no longer a plaintiff.

a stand-up type 3 barricade with high intensity blinking light. Smith used a smaller type 2 folding barricade with a low intensity blinker. There was conflicting evidence whether Van Voorhis told Bouchard to use a type 2 barricade.

Road work warning signs were used during the workday and removed at night. The county did not require warning signs for equipment left onsite after the end of the workday. The evidence conflicted whether safety cones were required or used. Expert testimony conflicted as to whether the warning devices were sufficient.

Estimates of Powell's speed by different experts ranged from 54 to 68.7 miles per hour. Based on tire marks, it appeared unlikely that he applied the brakes.

Plaintiffs' forensic engineering expert testified that Powell hit the barricade, the tank trailer, and then the backhoe. He testified that injuries would have been avoided or minimized if the equipment had not been placed in the path of the vehicle.

### *Verdicts*

The jury returned a unanimous special verdict. It found Powell's negligence was a substantial factor in causing harm to the plaintiffs. It also found that Hatcher's and Bean's negligence was a substantial factor in causing harm to themselves. It found the Hatchers suffered non-economic damages of $2 million, with 5 percent attributed to Hatcher and the remaining 95 percent ($1.9 million) to Powell. It found Hoff suffered non-economic damages of $5 million, and attributed 100 percent to Powell.

The jury determined that Bean's economic damages were $500,000 and non-economic damages were $1 million, with 15 percent attributed to Bean and the remaining 85 percent

4

($1,275,000) to Powell.  It determined that although Bouchard and Smith were negligent, their negligence was not a substantial factor in causing harm to the plaintiffs.

### *Motion for new trial*

The court denied Powell's motion for a new trial.  The ruling stated:  "The Court finds that the jury's verdict that Bouchard Communications and Mark Smith dba Smitty's Construction were negligent but not substantial contributing factors in the damages claimed by plaintiffs is well supported by the evidence.  Exercising its independent judgment as the 13th juror, the Court reaches the same conclusion.  The fact is that Powell was the sole cause of the accident by driving intoxicated at a speed nearly double the posted speed limit, at night, along a two-lane country road.  Bouchard and Smitty's Construction's negligence was not a substantial contributing factor in this accident or in plaintiffs' damages."

### *Cost award*

Following a hearing on motions for costs and to tax costs, the court ordered that Powell pay the Hatchers' costs of $1,454,938.70.

## DISCUSSION

### *Jury instruction*

Powell contends that Smith and Bouchard had a "nondelegable duty" to ensure a safe storage area, and therefore the trial court erred when it refused a special jury instruction he requested:  "Bouchard Communications, Inc., had a nondelegable duty to use reasonable care to store and secure the construction equipment to prevent harm to others that could not be delegated to the County of Ventura or Mark Smith."  There was no error.

On request, a party is entitled to correct instructions

5

on each legal theory supported by substantial evidence.  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)  "'A court may refuse a proposed instruction that incorrectly states the law'" or "'if other instructions given adequately cover the legal point. [Citation.]'" (*Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 80.)  We review de novo the trial court's denial of a requested jury instruction.  (*Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1373.)

The jury instructions given correctly and adequately explained Bouchard's and Smith's liability.  The court instructed the jury that Smith was Bouchard's agent, and Bouchard was responsible for any harm caused by Smith's negligence.  (CACI No. 3703, modified.)  The jury was instructed to determine "how a reasonably careful person would have acted" in Bouchard's and Smith's situation.  (CACI No. 401, modified.)

The jury was also instructed:  "Following or not following the permit conditions or the Inspector's authorizations, approvals or directions concerning same, does not, in and of itself, establish that [Bouchard and/or Smith] did or did not use reasonable care.  You may consider such evidence as one of among the totality of circumstances in your determination of whether [Bouchard and/or Smith] used reasonable care."

The jury was further instructed:  "Evidence of State and Federal laws, ordinances, rules, regulations, and standards about traffic safety measures . . . has been received for a limited purpose.  You may, but are not required, to consider this evidence for the limited purpose of (1) determining whether [Bouchard and/or Smith] complied with traffic safety customs and practices in the construction industry; and (2) determining whether [Bouchard and/or Smith] used reasonable care to avoid harm to

6

others arising from its construction activities on or about Potrero Road."

Powell did not object to any of these instructions. Together, the jury instructions made clear that Van Voorhis's instructions regarding equipment storage, if any, did not absolve Bouchard or Smith of liability, but were a factor in whether their conduct was reasonable.

The requested special instruction was purportedly based on CACI No. 3713. But CACI No. 3713, and the law it summarizes, provides that certain duties of a hirer cannot be delegated to an independent contractor. The principle set forth in CACI No. 3713 does not apply here because neither Bouchard nor Smith was "an independent contractor of the public entity." (Gov. Code, § 815.4; *Jordy v. County of Humboldt* (1992) 11 Cal.App.4th 735, 742 [county had no duty to prevent isolated negligence of foster parents].) And County's opportunity to observe the work and influence the contractor's and subcontractor's conduct did not make it the hirer. (*Jordy*, at p. 744.)

Powell relies on *Felmlee v. Falcon Cable TV* (1995) 36 Cal.App.4th 1032, 1036, which states, "A nondelegable duty is a definite affirmative duty the law imposes on one by reason of his or her relationship with others." But in that case, we held that a general contractor did not have a nondelegable duty to comply with a safety order.

Powell nevertheless argues that the trial court was required to instruct the jury regarding nondelegable duty in light of his agreement regarding the special verdict form. Plaintiffs moved in limine to exclude a question regarding negligence by the County from the verdict form, and to preclude Powell from

7

seeking apportionment against the County, as a result of their good faith settlement with the County. Powell offered to withdraw his opposition to the motion "if the Court becomes satisfied that this is truly a nondelegable duty, so that if in fact Mr. [Van Voorhis] did issue that instruction, it would not obviate the responsibility of Bouchard and Smitty's." The court acknowledged that "your withdrawal's conditional upon whether I'm finding nondelegable duty or not." Powell's counsel stated, "[W]ith the understanding if the Court finds it's a nondelegable duty or . . . the indemnity holds, then I will not be asking that the County be [listed] on the verdict form." The court granted the motion.

It is true that "it is error for a trial court not to allow the jury to assess the comparative fault of defendants who settled before trial." (*Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990, 1011.) But failure to object to a special verdict form ordinarily forfeits challenges to the form. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 530.) And the jury instructions given here made it clear that the County's actions did not immunize Bouchard or Smith from a finding of negligence. Indeed, the jury found them negligent, but found that their negligence did not cause the accident or plaintiffs' injuries.

Powell next argues that he was precluded from arguing the County was partially at fault, and stated he would have presented additional evidence to show the County's liability. The trial court explained that the principle of nondelegable duty did not apply. The court said it incorrectly labeled as "nondelegable duty" the issue of whether "complying with somebody else's instruction relieves one of the duty of due care." The issue of whether Bouchard and Smith were negligent

8

included the question of whether it was reasonable for them to comply with the County's directions. The jury determined that they were negligent, but that their negligence was not a cause of the harm. No further instructions were required.

### *Inconsistent verdicts*

Powell contends the jury's verdict that Bouchard and Smith were negligent is inconsistent with its verdict that their negligence was not a substantial factor in causing harm to Hatcher, Hoff, and Bean. We disagree.

When a jury renders inconsistent verdicts based on the same evidence, the inconsistency is reversible error. (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 682 (*Horton*).) "Where there is an inconsistency between or among answers within a special verdict, both or all the questions are equally against the law. [Citation.] The appellate court is not permitted to choose between inconsistent answers." (*Ibid.*)

As a general rule, "'"[w]e review a special verdict de novo to determine whether its findings are inconsistent."'" (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1316 (*Bermudez*).) Because the jury did not make a special finding as to which conduct by Bouchard and Smith was negligent, "the jury's finding is tantamount to a general verdict." (*Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 26.) Accordingly, we review the verdict for substantial evidence, "drawing every reasonable inference and resolving every conflict to support the judgment." (*Id.* at p. 24.) "As long as a single theory of negligence is lawfully rebutted on a lack of causation theory, it matters not that another theory of negligence is not so rebutted." (*Id.* at p. 26.)

9

The jury may have based its negligence finding against Bouchard and Smith on several theories: the equipment should not have been placed at the apex of the turn, the equipment was located less than 10 feet from the road, it should have been removed as soon as the work was completed, a type 3 barricade should have been used, signs should have been placed ahead of the curve, or an adequate number of safety cones should have been used. Whether placing the equipment farther from the road would have avoided or lessened the harm from the accident is not established by the evidence. And the jury could have reasonably concluded that inadequate warning devices were not a substantial factor in causing the harm based on Powell's intoxication, speed, and admission that he saw the equipment.

"'A special verdict is inconsistent if there is no possibility of reconciling its findings with each other.'" (*Bermudez, supra*, 237 Cal.App.4th at p. 1316.) Here, as in *Bermudez*, the jury was entitled to conclude that Bouchard and Smith were negligent, but that their negligence was not a substantial factor in causing either the accident or the resulting deaths and injuries. Powell drove off the road because he was intoxicated and speeding on a dark and winding road. The evidence did not establish that if the backhoe had been parked farther from the road but in the path of the vehicle, or if better warning devices had been used, Powell would have avoided hitting it, or would have hit it at an angle that would have lessened the harm to his passengers.

### *New trial*

Powell contends the trial court abused its discretion when it denied his motion for a new trial. There was no abuse of discretion.

10

In ruling on a motion for new trial, the trial judge sits as a "'thirteenth juror'" and "'independently assess[es] the evidence supporting the verdict.'" (*Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503.) We review an order denying a new trial for abuse of discretion. (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 588-589.) But we examine the determination underlying the order using the applicable test for such a determination—in this case, whether the verdicts were inconsistent as a matter of law. (*Horton, supra*, 126 Cal.App.4th at p. 678, citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859.)

*David v. Hernandez*, *supra*, 226 Cal.App.4th 578, cited by Powell, is inapposite. There, the trial court found the defendant was negligent per se when he parked his tractor trailer facing north on the southbound side of a highway in violation of the Vehicle Code. When he pulled out to cross the highway and drive north, the plaintiff, driving southbound, hit the trailer, injuring himself and his passenger. We held that the plaintiff's inattention could not have been the sole cause of the collision because it would not have occurred but for the defendant's negligence in being in a place where he had no legal right to be. (*David*, at pp. 590-591.)

In contrast here, if the jury found Bouchard's and Smith's negligence was based on inadequate warning devices, it could have reasonably concluded that was not a substantial factor in causing the harm. The trial judge, sitting as a thirteenth juror, agreed that Bouchard's and Smith's negligent conduct was not the cause of the harm. The court therefore did not abuse its discretion.

11

### *Cost award*

Powell contends the trial court abused its discretion in the amount of its award of attorney's fees and costs. We are not persuaded.

The Hatchers sought costs of $1,458,588.72, including prejudgment interest of $544,493.80 (Civ. Code, § 3291; Code Civ. Proc., § 998) and attorney's fees of $760,000 (Code Civ. Proc., § 1021.4). After Powell filed a motion to tax costs, the trial court reduced the jury fees by $1,150 and deducted $2,500 for expert fees incurred prior to the Code of Civil Procedure section 998 offer. The court found it was not feasible to apportion attorney's fees in the investigation and presentation of the case against Powell as opposed to the case against Bouchard and Smith because counsel's efforts against these defendants were inextricably intertwined.

Powell did not deny his liability. Instead, he attempted to show that Bouchard and Smith bore some responsibility. As the trial court noted, the case could not have been presented without significant expert testimony to determine who was legally responsible.

In awarding attorney's fees and costs, the trial court properly considered the time spent, reasonable hourly compensation, complexity of the issues, success achieved, and skill of the attorneys. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49.) The factual and legal issues regarding Bouchard and Smith were closely related to those regarding Powell. (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 417.) The attorney's fees and costs were proportionate to the judgment obtained. (*Id.* at p. 419.) They were not so large as to "shock[] the conscience and suggest[] that passion and prejudice

12

influenced the determination." (*Id.* at p. 428.)  Accordingly, there was no abuse of discretion.  (*Ibid.*)

### *Offset*

The Hatchers' and Hoff's respondents' brief states that Powell is entitled to an offset for the $60,000 settlement paid by the County.  Powell did not request an offset in either the trial court or in his opening brief. (See *Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1044, 1048-1049 [trial court procedures for offset; abuse of discretion standard on appeal].)  No party discusses the rule that an offset for settlement funds is limited to economic losses, in proportion to the total damages award.  (Civ. Code, § 1431.2; *Hellam v. Crane Co.* (2015) 239 Cal.App.4th 851, 862-863.)

Because Bean received the only economic damages award, it appears her award would be the only one affected by an offset.  No brief was filed on behalf of Bean, and we advised her that the appeal would be submitted for decision on the record and appellant's opening brief.  (Cal. Rules of Court, rule 8.220(a)(2).)  We decline to modify the judgment based on the statement in the Hatchers' and Hoff's respondents' brief.

### DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


GILBERT, P. J.            YEGAN, J.


13

Matthew P. Guasco, Judge

Superior Court County of Ventura

_____

Shaver, Korff & Castronovo, Tod M. Castronovo and Alex Silva Van Vo for Defendant and Appellant.

Law Office of Gerald Philip Peters and Gerald P. Peters for Plaintiffs and Respondents.